## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| ANTHONY BUTTITA, SEFTON ANDERSON, CHRISTOPHER BARNHART, DEAN BOURN, PATRICK CHILSON, STEPHEN FULTON, BRUNZELL GRIFFIN, WALTER HAMILTON, JOE HILL, CHARLES KENT, JOHN LEAVELL, CHRISTOPHER LUCIO, GERALD MICKALOWSKI, RAYMOND ORLANDO, CHRISTOPHER PHILBIN, ANTHONY TALLADINO, BRIAN TINNEY, PAUL ASCHENBRENER, RALPH ELLIS, JASON LEWIS, MICHAEL PICOU, ROHAN REID, WILLIAM SESTITO, KYLE BAIN, GERRY BEAUMARIAGE, JOSH HOLLAND, HERBERT PATTERSON, JR., and FREDDY RAMIREZ, | **JURY TRIAL DEMANDED** <br><br><br><br> **Case No.**   14-cv-0566 |
| **Plaintiffs,** | |
| v. | |
| DIRECTV, INC., DIRECTV, LLC, MASTEC NORTH AMERICA INC., and DIRECTSAT USA, LLC, | |
| **Defendants.** | |

## COMPLAINT

Plaintiffs Anthony Buttita, Sefton Anderson, Christopher Barnhart, Dean Bourn, Patrick Chilson, Stephen Fulton, Brunzell Griffin, Walter Hamilton, Joe Hill, Charles Kent, John Leavell, Christopher Lucio, Gerald Mickalowski, Raymond Orlando, Christopher Philbin, Anthony Talladino, Brian Tinney, Paul Aschenbrener,

Ralph Ellis, Jason Lewis, Michael Picou, Rohan Reid, William Sestito, Kyle Bain, Gerry Beaumariage, Josh Holland, Herbert Patterson, Jr., and Freddy Ramirez, by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV"); and MasTec North America Inc., and DirectSat USA, LLC ("Provider Defendants" or "HSP Defendants") (collectively with DIRECTV, "Defendants"); hereby state as follows:

## NATURE OF SUIT

1.      DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching "fissured employment"[1] scheme.  In order to expand and service its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged tens of thousands of technicians—including each of the Plaintiffs in this case—to install and repair its satellite systems. Although DIRECTV requires these technicians to drive a DIRECTV-branded vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting policies and procedures, DIRECTV disclaims any legal relationship with these workers, tagging them instead as "independent contractors" or employees of

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner, quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws. *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014); David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

subordinate entities (including the named service provider Defendants). But fortunately for these workers, it is the economic reality of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiffs meet the definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards Act ("FLSA").

2.    Plaintiffs' claims squarely challenge this dangerous trend, and are not the first to do so. The U.S. Department of Labor ("DOL") has made a priority of investigating and exposing multi-party business arrangements that shirk compliance with the FLSA. *See* http://wage-hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx (last visited Oct. 9, 2014). The DOL's Misclassification Initiative, launched under Vice President Biden's Middle Class Task Force, is aggressively combating this pervasive issue in order to restore rights denied to individuals.[2] In September 2011, then-Secretary of Labor Hilda L. Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to

_____

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they are entitled. In addition, misclassification can create economic pressure for law-abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds." *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Oct. 9, 2014); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Oct. 9, 2014).

help reduce the tax gap, and to improve compliance with federal labor laws. The DOL's Wage and Hour Division is also partnering with individual states whose workers are being subjected to this practice.[3]

3.    The individual Plaintiffs joined herein intend to prove in this litigation that they are legally employed by DIRECTV and, where applicable, one or more of the named Provider Defendants, and are entitled to the overtime and minimum wage protections of the FLSA.

## JURISDICTION AND VENUE

4.    The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' individual FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.

## PARTIES

6.    Sefton Anderson is an individual residing in Ocala, Florida.

7.    Christopher Barnhart is an individual residing in Sebring, Florida.

8.    Dean Bourn is an individual residing in Vermillion, South Dakota.

9.    Anthony Buttita is an individual residing in Cantonment, Florida.

10.    Patrick Chilson is an individual residing in Floral City, Florida.

---

[3] *See, e.g.*, DOL Misclassification Initiative, (last visited Oct. 9, 2014).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| ANTHONY BUTTITA, SEFTON ANDERSON, CHRISTOPHER BARNHART, DEAN BOURN, PATRICK CHILSON, STEPHEN FULTON, BRUNZELL GRIFFIN, WALTER HAMILTON, JOE HILL, CHARLES KENT, JOHN LEAVELL, CHRISTOPHER LUCIO, GERALD MICKALOWSKI, RAYMOND ORLANDO, CHRISTOPHER PHILBIN, ANTHONY TALLADINO, BRIAN TINNEY, PAUL ASCHENBRENER, RALPH ELLIS, JASON LEWIS, MICHAEL PICOU, ROHAN REID, WILLIAM SESTITO, KYLE BAIN, GERRY BEAUMARIAGE, JOSH HOLLAND, HERBERT PATTERSON, JR., and FREDDY RAMIREZ, | **JURY TRIAL DEMANDED** |
| Plaintiffs, | Case No. |
| v. | |
| DIRECTV, INC., DIRECTV, LLC, MASTEC NORTH AMERICA INC., and DIRECTSAT USA, LLC, | |
| Defendants. | |

## COMPLAINT

Plaintiffs Anthony Buttita, Sefton Anderson, Christopher Barnhart, Dean Bourn, Patrick Chilson, Stephen Fulton, Brunzell Griffin, Walter Hamilton, Joe Hill, Charles Kent, John Leavell, Christopher Lucio, Gerald Mickalowski, Raymond Orlando, Christopher Philbin, Anthony Talladino, Brian Tinney, Paul Aschenbrener,

Ralph Ellis, Jason Lewis, Michael Picou, Rohan Reid, William Sestito, Kyle Bain, Gerry Beaumariage, Josh Holland, Herbert Patterson, Jr., and Freddy Ramirez, by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV"); and MasTec North America Inc., and DirectSat USA, LLC ("Provider Defendants" or "HSP Defendants") (collectively with DIRECTV, "Defendants"); hereby state as follows:

**NATURE OF SUIT**

1.    DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching "fissured employment"[1] scheme. In order to expand and service its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged tens of thousands of technicians—including each of the Plaintiffs in this case—to install and repair its satellite systems. Although DIRECTV requires these technicians to drive a DIRECTV-branded vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting policies and procedures, DIRECTV disclaims any legal relationship with these workers, tagging them instead as "independent contractors" or employees of

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner, quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws. *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014); David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

subordinate entities (including the named service provider Defendants). But fortunately for these workers, it is the economic reality of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiffs meet the definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards Act ("FLSA").

2.     Plaintiffs' claims squarely challenge this dangerous trend, and are not the first to do so. The U.S. Department of Labor ("DOL") has made a priority of investigating and exposing multi-party business arrangements that shirk compliance with the FLSA. *See* http://wage-hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx (last visited Oct. 9, 2014). The DOL's Misclassification Initiative, launched under Vice President Biden's Middle Class Task Force, is aggressively combating this pervasive issue in order to restore rights denied to individuals.[2] In September 2011, then-Secretary of Labor Hilda L. Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to

---

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they are entitled. In addition, misclassification can create economic pressure for law-abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds." *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Oct. 9, 2014); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Oct. 9, 2014).

help reduce the tax gap, and to improve compliance with federal labor laws. The DOL's Wage and Hour Division is also partnering with individual states whose workers are being subjected to this practice.[3]

3.      The individual Plaintiffs joined herein intend to prove in this litigation that they are legally employed by DIRECTV and, where applicable, one or more of the named Provider Defendants, and are entitled to the overtime and minimum wage protections of the FLSA.

## JURISDICTION AND VENUE

4.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' individual FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.

## PARTIES

6.      Sefton Anderson is an individual residing in Ocala, Florida.

7.      Christopher Barnhart is an individual residing in Sebring, Florida.

8.      Dean Bourn is an individual residing in Vermillion, South Dakota.

9.      Anthony Buttita is an individual residing in Cantonment, Florida.

10.     Patrick Chilson is an individual residing in Floral City, Florida.

---

[3] See, e.g., DOL Misclassification Initiative, (last visited Oct. 9, 2014).

11.    Stephen Fulton is an individual residing in Milton, Florida.

12.    Brunzell Griffin is an individual residing in Jacksonville, Florida.

13.    Walter Hamilton is an individual residing in Pensacola, Florida.

14.    Joe Hill is an individual residing in Orange Park, Florida.

15.    Charles Kent is an individual residing in Trinity, Florida.

16.    John Leavell is an individual residing in Masaryktown, Florida.

17.    Christopher Lucio is an individual residing in Apopka, Florida.

18.    Gerald Mickalowski is an individual residing in Panama City, Florida.

19.    Raymond Orlando is an individual residing in Milton, Florida.

20.    Christopher Philbin is an individual residing in Jacksonville, Florida.

21.    Anthony Talladino is an individual residing in Jacksonville, Florida.

22.    Brian Tinney is an individual residing in Palm Bay, Florida.

23.    Paul Aschenbrener is an individual residing in Saint Cloud, Florida.

24.    Ralph Ellis is an individual residing in Flintstone, Georgia.

25.    Jason Lewis is an individual residing in Milton, Florida.

26.    Michael Picou is an individual residing in Pensacola, Florida.

27.    Rohan Reid is an individual residing in Babson Park, Florida.

28.    William Sestito is an individual residing in Williston, Florida.

29.    Kyle Bain is an individual residing in Punta Gorda, Florida.

30.    Gerry Beaumariage is an individual residing in Largo, Florida.

31.    Josh Holland is an individual residing in Gulf Breeze, Florida.

32.    Herbert Patterson, Jr., is an individual residing in Jacksonville, Florida.

33.    Freddy Ramirez is an individual residing in Fountain, Florida.

34.    DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services. In December 2011, DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations, LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware corporation with its principal place of business in El Segundo, California.

35.    Defendant MasTec North America, Inc. ("MasTec") is a Florida corporation with its principal place of business in Coral Gables, Florida.

36.    Defendant DirectSat USA, LLC ("DirectSat") is a Delaware limited liability company with its principal place of business in King of Prussia, Pennsylvania.

37.    All Plaintiffs performed work for DIRECTV and, where applicable, one or more Provider Defendants in Florida.

38.    All Defendants do business or have done business in Florida.

## COMMON FACTUAL ALLEGATIONS

### DIRECTV's Fissured Employment Scheme: The Provider Network

39.    Plaintiffs' principal job duty as technicians was to install and repair DIRECTV satellite television service.

40.    DIRECTV oversees a network of Providers (the "Provider Network") who supply DIRECTV this workforce of technicians, either by serving as their ostensible employer, or by "subcontracting" with technicians dubbed "independent contractors."

41.    DIRECTV conceived of, formed, and manages DIRECTV's Provider Network.    DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California, reaching each state where Plaintiffs work.

42.    The Provider Network is comprised of principal intermediaries that DIRECTV dubs its Home Service Providers ("HSPs"), secondary intermediaries deemed "Secondary Providers," as well as a patchwork of largely captive entities that are generally referred to as subcontractors.

43.    Upon information and belief, at all relevant times, DIRECTV was the primary, if not the only, client of the Providers and was the source of substantially all of each Provider's income.

44.    During the relevant time period, and as alleged in more detail *infra*, many HSPs were subsumed by DIRECTV through a series of mergers and acquisitions, leaving, for purposes relevant to the instant cases, only HSPs DirectSat, MasTec, and Multiband.

45.    DIRECTV controls the Provider Network through a variety of means including detailed agreements known as Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider Agreement of Equipment Installation and Service (collectively referred to herein as the "Provider Agreements"). The Provider Agreements establish parallel—indeed, effectively identical—business relationships between DIRECTV and each HSP and subcontractor. The salient provisions of each Provider Agreement contain the same policies, procedures, performance standards, and payment method requirements.

46.    The Provider Agreements specify DIRECTV's mandatory policies and procedures. And they obligate DIRECTV's intermediaries to hand them down to the technicians.

47.    The Provider Agreements enable DIRECTV to control nearly every facet of the technician's work, down to the "DIRECTV" shirts they are required to wear and the "DIRECTV" ID card they must show customers.  DIRECTV assigns each technician a scope of work described in a Work Order that DIRECTV itself delivers to each technician via a centralized computer software system that DIRECTV controls.  DIRECTV mandates particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures. As a consequence, each technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for.

48.    Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV used a database program known as SIEBEL to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

49.    After receiving their daily work schedules, Plaintiffs typically called the customer contact for each of their assigned jobs to confirm the timeframe within which the technician expected to arrive at the customer's home. Plaintiffs then traveled to their first assigned job and thereafter continued to complete the jobs assigned by Defendants in the prescribed order on the daily work schedule. Upon

arriving at each job site, Plaintiffs were required to check-in by telephone with DIRECTV via its dispatching system. At the end of an assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

50.    When performing DIRECTV's work, Plaintiffs were required by Defendants to wear a uniform with DIRECTV insignia on it. Additionally, Plaintiffs were required to display DIRECTV insignia on vehicles driven to customers' homes for installations. Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.

51.    Although DIRECTV controls nearly every aspect of the technicians' work, Defendants insist that the technicians are not employees of DIRECTV, and often claim that they are not employees at all, rather that they are "independent contractors."

52.    Plaintiffs will show that the Provider Network is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA.

### DIRECTV's Workforce Consolidation: Acquisition of Providers by Defendants

53.    DIRECTV's control over its purportedly independent provider partners is integral to its fissured employment scheme. So much so that DIRECTV regularly infuses these partners with what it labels internally as "extraordinary advance payments" in order to keep their dependent operations afloat while

preserving an outward appearance of independence. When litigation or other circumstances make the "independent" relationship a negative for DIRECTV, DIRECTV simply absorbs these entities by acquisition.

54. The absorption by DIRECTV is seamless, simply a resetting of titles without the functional modifications that normally accompany an arm's length acquisition. To date, there are only three "independent" HSPs still in operation—including the named Provider Defendants. Since DIRECTV developed its HSP Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.[4] Below is a description of the prior HSPs for which the Plaintiffs technicians worked and how that HSP was ultimately acquired by DIRECTV.

**DTV Home Services II, LLC**

55. Upon information and belief, DIRECTV acquired DTV Home Services II, LLC, including all of its facilities. After the acquisition, DIRECTV conducted business out of DTV Home Services II, LLC's locations, and personnel from DTV Home Services II, LLC worked for DIRECTV. Many of DTV Home Services II, LLC's employees were hired by DIRECTV.

56. Upon information and belief, working conditions for installation technicians who worked for DTV Home Services II, LLC remained substantially the same after DIRECTV acquired DTV Home Services II, LLC. Likewise, technicians,

---

[4] These include AeroSat, Bruister, Bluegrass Satellite and Security, ConnecTV, Directech NE, Directech SW, DTV Home Services II, LLC, Halsted Communications, Ironwood Communications, JP&D Digital Satellite, Michigan Microtech, Mountain Satellite and Security, and Skylink.

including Plaintiffs, had substantially the same job(s) after DIRECTV acquired DTV Home Services II, LLC. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

### The Economic Reality: DIRECTV and its Provider Network Employ the Technicians

57.     DIRECTV exerts significant control over the Providers and Plaintiffs regarding the essential terms and conditions of Plaintiffs' employment.

58.     In fact, DIRECTV is the primary, if not the exclusive, client of the Providers, and accounts for the majority, if not all, of their revenue.

59.     Defendants are, and were at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

60.     Although hiring is generally done at the Providers' level, DIRECTV controls the details of Plaintiffs' day-to-day work.

61.     Through the Providers, DIRECTV exercises significant control over Plaintiffs' daily work lives, including, but not limited to, control over what work Plaintiffs performed, where that work was performed, when that work was performed, and how that work was performed.

62.     Through the Providers, DIRECTV also determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for

11

the Plaintiffs' work. Providers then administered payroll and provided Plaintiffs with their paychecks.

63.    DIRECTV, through the Providers, exerted control over Plaintiffs sufficient to establish that they employed Plaintiffs. DIRECTV and the Providers constitute employers subject to liability under the FLSA.

64.    DIRECTV required Plaintiffs to hold themselves out as agents of DIRECTV.

65.    DIRECTV promulgates detailed instructions for how installations are to be completed. Plaintiffs received these instructions and performed the work as DIRECTV required. Plaintiffs were not given meaningful discretion in how they performed installations.

66.    DIRECTV publishes training materials that technicians such as Plaintiffs are required to review.

67.    DIRECTV requires that all technicians obtain a certification from the Satellite Broadcasting & Communications Association ("SBCA") before that technician may be assigned DIRECTV work orders. This requirement allows DIRECTV to mandate certain training for all technicians.

68.    DIRECTV utilizes a network of quality control personnel and field managers to oversee the work performed by Plaintiffs.

69.    DIRECTV and Providers' quality control personnel reviewed Plaintiffs' work, and Plaintiffs were subject to chargebacks and/or rollbacks based on those reviews.

70.     Defendants are each engaged in interstate commerce and, upon information and belief, Defendants each gross more than Five Hundred Thousand Dollars in revenue per year.

71.     The net effect of Defendants' policies and practices, instituted by DIRECTV and administered by Provider Defendants, is that Defendants willfully fail to pay minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs.

**The Piece-Rate System: DIRECTV's Unlawful Payment Scheme**

72.     As with other aspects of Plaintiffs' work, DIRECTV effectively controlled Plaintiffs' pay through the common policies and practices mandated in its Provider Agreements.

73.     Every Plaintiff was paid pursuant to the piece-rate payment scheme that is utilized throughout DIRECTV's network.

74.     There was no contract, memorandum, or other document between Plaintiffs and Defendants properly memorializing or explaining this pay system.

75.     Under this system, Plaintiffs were not paid for all hours they worked for Defendants. Rather, they were paid on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation. The piece-rate system only pays technicians for certain enumerated "productive" tasks but fails to compensate technicians for all necessary work they perform.

76.     In addition to the certain tasks DIRECTV designated as compensable, Plaintiffs performed other work each week during the relevant time period for

Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

77.    Plaintiffs were not paid for these integral and indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service.

78.    Defendants did not pay Plaintiffs' wages free and clear. Rather, Plaintiffs were subjected to "chargebacks" wherein Defendants would deduct amounts from Plaintiffs' pay if there were issues with an installation, or questions from the customer, generally up to 90 days after the customer's service was activated. The chargeback would occur for a variety of reasons, many of which were out of Plaintiffs' control, including, for example, faulty equipment, improper installation, customer calls regarding how to operate their remote control, or a customer's failure to give greater than a 95% satisfaction rating for the services provided by the technician.

79.    In addition to chargebacks, those technicians who were misclassified as independent contractors were also required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. Nor were these

14

independent contractors paid an overtime premium for work done beyond 40 hours in a workweek.

80.    The required purchase of these supplies for Defendants' financial benefit reduced the wages of these technicians, including overtime pay.

81.    Plaintiffs routinely worked more than 40 hours per week for Defendants, as alleged in more detail below.

82.    Plaintiffs were not paid the overtime premium required by applicable law for work done beyond 40 hours in a given workweek.

83.    Defendants' policy and practice of imposing "chargebacks," failing to compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs' necessary business expenses resulted in Plaintiffs routinely working more than forty hours in a work week while being denied overtime pay and being subjected to an effective wage rate below that required by applicable law.

84.    Plaintiffs intend to prove that Defendants' piece-rate pay system constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA.

**LITIGATION HISTORY**

***Lang v. DIRECTV***

85.    A majority of Plaintiffs in this case, including Sefton Anderson, Christopher Barnhart, Dean Bourn, Anthony Buttita, Patrick Chilson, Stephen Fulton, Brunzell Griffin, Walter Hamilton, Joe Hill, Charles Kent, John Leavell, Christopher Lucio, Gerald Mickalowski, Raymond Orlando, Christopher Philbin, Anthony

Talladino, and Brian Tinney, previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV, et al.*, No. 10-1085-NJB. The *Lang* case was pending as a collective action until the court, on August 30, 2013, granted the parties' joint motion decertifying the class, dismissed the opt-in plaintiffs' claims without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 60 days from the date of the order. *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs. 466, 466-1).

### *Acfalle v. DIRECTV*

86.    Within the 60 days granted by the *Lang* court, Plaintiffs Sefton Anderson, Christopher Barnhart, Dean Bourn, Anthony Buttita, Patrick Chilson, Stephen Fulton, Brunzell Griffin, Walter Hamilton, Joe Hill, Charles Kent, John Leavell, Christopher Lucio, Gerald Mickalowski, Raymond Orlando, Christopher Philbin, Anthony Talladino, and Brian Tinney filed an action in the Central District of California on November 1, 2013. *Acfalle v. DirecTV*, Case No. 13-8108 ABC (Ex) (Doc. 1) (amended on December 23, 2013, by Doc. 9). On July 22, 2014, the court entered an order granting, in part, Defendants' Motions to Sever Claims of Plaintiffs. (Doc. 71) In that order, the court "dropped" 277 plaintiffs with FLSA-only claims, dismissing them without prejudice to refile their claims closer to their home states or where they were employed, that is, "where they performed their work." (Doc. 71, at 5, 8.) The court tolled the statute of limitations for 90 days to permit Plaintiffs to refile their claims. (Doc. 71, at 8.)

16

87.    Within the 90 days granted by the *Acfalle* court, Plaintiffs Sefton Anderson, Christopher Barnhart, Dean Bourn, Anthony Buttita, Patrick Chilson, Stephen Fulton, Brunzell Griffin, Walter Hamilton, Joe Hill, Charles Kent, John Leavell, Christopher Lucio, Gerald Mickalowski, Raymond Orlando, Christopher Philbin, Anthony Talladino, and Brian Tinney filed the instant Complaint, joining their individual claims against Defendants.

***Arnold v. DIRECTV***

88.    Plaintiffs Paul Aschenbrener, Ralph Ellis, Jason Lewis, Michael Picou, Rohan Reid, and William Sestito previously filed consents to become party plaintiffs in *Arnold v. DIRECTV*, No. 10-0352-JAR, originally filed on March 2, 2010, pending in the Eastern District of Missouri. Pursuant to a Proposed Case Management Plan (Doc. 200) and Amended Case Management Order (Doc. 216), the court redefined the claims into subclasses (Doc. 220, Second Amended Complaint) and entered an order which, in pertinent part, directed Plaintiffs to decertify and dismiss the claims of certain opt-in plaintiffs, including Paul Aschenbrener, Ralph Ellis, Jason Lewis, Michael Picou, Rohan Reid, and William Sestito, without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 90 days from the date of the order. *Arnold v.*

*DIRECTV*, Case No. 10-0325-JAR (E.D. Mo.) (Doc. 221, Notice of Voluntary Decertification).[5]

89.    Within the 90 days granted by the *Arnold* court, Plaintiffs Paul Aschenbrener, Ralph Ellis, Jason Lewis, Michael Picou, Rohan Reid, and William Sestito joined their individual claims in this action.

## PLAINTIFFS' CLAIMS

### Sefton Anderson

90.    Plaintiff Sefton Anderson is an individual residing in the state of Florida. Between approximately May 2008 and September 2014, Sefton Anderson routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the states of Florida, Georgia, South Carolina, Mississippi, Louisiana, Texas, and Tennessee, and was unlawfully deprived of overtime compensation.

91.    In fact, Sefton Anderson spent in excess of 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

92.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Sefton Anderson for all hours worked, and failing to reimburse Sefton Anderson's necessary business expenses) resulted in Sefton Anderson being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

93.    Sefton Anderson brings claims against DIRECTV and MasTec.

---

[5] Plaintiff Rohan Reid is not identified on the list of opt-in plaintiffs dismissed from *Arnold* because certain of his claims – those for time served as a W-2 employee of a HSP and not for time claimed herein – remain active in *Arnold*.

**Christopher Barnhart**

94.     Plaintiff Christopher Barnhart is an individual residing in the state of Florida. Between approximately January 2011 and March 2013, Christopher Barnhart routinely worked more than 40 hours per week as a technician for DIRECTV, DTV Home Services II, LLC, and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

95.     In fact, Christopher Barnhart spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

96.     Defendants' employment policies and practices detailed herein (*i.e.,* imposing "chargebacks," failing to compensate Christopher Barnhart for all hours worked, and failing to reimburse Christopher Barnhart's necessary business expenses) resulted in Christopher Barnhart being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

97.     Christopher Barnhart brings claims against DIRECTV and MasTec.

**Dean Bourn**

98.     Plaintiff Dean Bourn is an individual residing in the state of South Dakota. Between approximately September 2010 and December 2012, Dean Bourn routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Florida, and also in Iowa, Illinois, and Missouri, and was unlawfully deprived of overtime compensation.

99.     In fact, Dean Bourn spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

19

100.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Dean Bourn for all hours worked, and failing to reimburse Dean Bourn's necessary business expenses) resulted in Dean Bourn being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

101.    Dean Bourn brings claims against DIRECTV.

**Anthony Buttita**

102.    Plaintiff Anthony Buttita is an individual residing in the state of Florida. Between approximately December 2010 and December 2011, Anthony Buttita routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

103.    In fact, Anthony Buttita spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

104.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Anthony Buttita for all hours worked, and failing to reimburse Anthony Buttita's necessary business expenses) resulted in Anthony Buttita being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

105.    Anthony Buttita brings claims against DIRECTV and MasTec.

**Patrick Chilson**

106.    Plaintiff Patrick Chilson is an individual residing in the state of Florida. Between approximately October 2010 and January 2011, Patrick Chilson routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

107.    In fact, Patrick Chilson spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

108.    Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Patrick Chilson for all hours worked and failing to reimburse Patrick Chilson's necessary business expenses) resulted in Patrick Chilson being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

109.    Patrick Chilson brings claims against DIRECTV and MasTec.

**Stephen Fulton**

110.    Plaintiff Stephen Fulton is an individual residing in the state of Florida. Between approximately June 2008 and 2010, Stephen Fulton routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Florida, and also in Alabama, and was unlawfully deprived of overtime compensation.

111.    In fact, Stephen Fulton spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

112.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Stephen Fulton for all hours worked, and failing to reimburse Stephen Fulton's necessary business expenses) resulted in Stephen Fulton being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

113.    Stephen Fulton brings claims against DIRECTV.

**Brunzell Griffin**

114.    Plaintiff Brunzell Griffin is an individual residing in the state of Florida. Between approximately January 2010 and December 2011, Brunzell Griffin routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

115.    In fact, Brunzell Griffin spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

116.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Brunzell Griffin for all hours worked, and failing to reimburse Brunzell Griffin's necessary business expenses) resulted in Brunzell Griffin being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

117.    Brunzell Griffin brings claims against DIRECTV and MasTec.

**Walter Hamilton**

118.    Plaintiff Walter Hamilton is an individual residing in the state of Florida. Between approximately 2006 and 2012, Walter Hamilton routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Florida, and was unlawfully deprived of overtime compensation.

119.    In fact, Walter Hamilton spent approximately 55 hours per week performing tasks for the benefit of Defendants, many unpaid.

120.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Walter Hamilton for all hours worked, and failing to reimburse Walter Hamilton's necessary business expenses) resulted in Walter Hamilton being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

121.    Walter Hamilton brings claims against DIRECTV.

**Joseph Hill**

122.    Plaintiff Joseph Hill is an individual residing in the state of Florida. Between approximately 2009 and January 2014, Joseph Hill routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

123.    In fact, Joseph Hill spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

124.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Joseph Hill for all hours worked, and failing to reimburse Joseph Hill's necessary business expenses) resulted in Joseph Hill being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

125.    Joseph Hill brings claims against DIRECTV and MasTec.

**Charles Kent**

126.    Plaintiff Charles Kent is an individual residing in the state of Florida. Between approximately March 2005 and May 2013, Charles Kent routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

127.    In fact, Charles Kent spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

128.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Charles Kent for all hours worked, and failing to reimburse Charles Kent's necessary business expenses) resulted in Charles Kent being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

129.    Charles Kent brings claims against DIRECTV and MasTec.

**John Leavell**

130.    Plaintiff John Leavell is an individual residing in the state of Florida. Between approximately December 2010 and June 2011, John Leavell routinely

worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

131.    In fact, John Leavell spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

132.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate John Leavell for all hours worked, and failing to reimburse John Leavell's necessary business expenses) resulted in John Leavell being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

133.    John Leavell brings claims against DIRECTV and MasTec.

**Christopher Lucio**

134.    Plaintiff Christopher Lucio is an individual residing in the state of Florida. Between approximately July 2010 and April 2011, Christopher Lucio routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

135.    In fact, Christopher Lucio spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

136.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Christopher Lucio for all hours worked, and failing to reimburse Christopher Lucio's necessary business expenses)

resulted in Christopher Lucio being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

137.    Christopher Lucio brings claims against DIRECTV and MasTec.

**Gerald Mickalowski**

138.    Plaintiff Gerald Mickalowski is an individual residing in the state of Florida. Between approximately March 2009 to January 2013, Gerald Mickalowski routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Florida, and also in Nebraska, Colorado, New Mexico, Texas, and Mississippi, and was unlawfully deprived of overtime compensation.

139.    In fact, Gerald Mickalowski spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

140.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Gerald Mickalowski for all hours worked, and failing to reimburse Gerald Mickalowski's necessary business expenses) resulted in Gerald Mickalowski being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

141.    Gerald Mickalowski brings claims against DIRECTV.

**Raymond Orlando**

142.    Plaintiff Raymond Orlando is an individual residing in the state of Florida. Between approximately August 2009 and October 2011, Raymond Orlando routinely worked more than 40 hours per week as a technician for DIRECTV and

DTV Home Services II, LLC in the state of Florida, and was unlawfully deprived of overtime compensation.

143.   In fact, Raymond Orlando spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

144.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Raymond Orlando for all hours worked, and failing to reimburse Raymond Orlando's necessary business expenses) resulted in Raymond Orlando being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

145.   Raymond Orlando brings claims against DIRECTV.

**Christopher Philbin**

146.   Plaintiff Christopher Philbin is an individual residing in the state of Florida. Between approximately June 2009 and April 2010, Christopher Philbin routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

147.   In fact, Christopher Philbin spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

148.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Christopher Philbin for all hours worked, and failing to reimburse Christopher Philbin's necessary business

expenses) resulted in Christopher Philbin being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

149.    Christopher Philbin brings claims against DIRECTV.

**Anthony Talladino**

150.    Plaintiff Anthony Talladino is an individual residing in the state of Florida. Between approximately 2009 and 2011, Anthony Talladino routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

151.    In fact, Anthony Talladino spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

152.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Anthony Talladino for all hours worked, and failing to reimburse Anthony Talladino's necessary business expenses) resulted in Anthony Talladino being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

153.    Anthony Talladino brings claims against DIRECTV and MasTec.

**Brian Tinney**

154.    Plaintiff Brian Tinney is an individual residing in the state of Florida. Between approximately October 2010 and May 2011, Brian Tinney routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

155.    In fact, Brian Tinney spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

156.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Brian Tinney for all hours worked, and failing to reimburse Brian Tinney's necessary business expenses) resulted in Brian Tinney being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

157.    Brian Tinney brings claims against DIRECTV and MasTec.

**Paul Aschenbrener**

158.    Plaintiff Paul Aschenbrener is an individual residing in the state of Florida. Between approximately August 2009 and January 2013, Paul Aschenbrener routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the states of Florida and Texas, and was unlawfully deprived of overtime compensation.

159.    In fact, Paul Aschenbrener spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

160.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Paul Aschenbrener for all hours worked, and failing to reimburse Paul Aschenbrener's necessary business expenses) resulted in Paul Aschenbrener being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

161.    Paul Aschenbrener brings claims against DIRECTV and MasTec.

29

**Ralph Ellis**

162.    Plaintiff Ralph Ellis is an individual residing in the state of Georgia. Between approximately May 2011 and January 2012, Ralph Ellis routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec primarily in the state of Florida and also in Georgia, and was unlawfully deprived of overtime compensation.

163.    In fact, Ralph Ellis spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

164.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Ralph Ellis for all hours worked, and failing to reimburse Ralph Ellis' necessary business expenses) resulted in Ralph Ellis being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

165.    Ralph Ellis brings claims against DIRECTV and MasTec.

**Jason Lewis**

166.    Plaintiff Jason Lewis is an individual residing in the state of Florida. Between approximately January 2012 and the present, Jason Lewis routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Florida, and also in Alabama, and was unlawfully deprived of overtime compensation.

167.    In fact, Jason Lewis spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

168.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jason Lewis for all hours worked, and failing to reimburse Jason Lewis' necessary business expenses) resulted in Jason Lewis being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

169.    Jason Lewis brings claims against DIRECTV.

**Michael Picou**

170.    Plaintiff Michael Picou is an individual residing in the state of Florida. Between approximately August 2011 and July 2013, Michael Picou routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Florida and also in Alabama, and was unlawfully deprived of overtime compensation.

171.    In fact, Michael Picou spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

172.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Michael Picou for all hours worked, and failing to reimburse Michael Picou's necessary business expenses) resulted in Michael Picou being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

173.    Michael Picou brings claims against DIRECTV.

**Rohan Reid**

174.   Plaintiff Rohan Reid is an individual residing in the state of Florida. Between approximately July 2011 and the present, Rohan Reid routinely worked more than 40 hours per week as a technician for DIRECTV in the state of Florida, and was unlawfully deprived of overtime compensation.

175.   In fact, Rohan Reid spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

176.   Defendants' employment policies and practices detailed herein (*i.e.,* imposing "chargebacks," failing to compensate Rohan Reid for all hours worked, and failing to reimburse Rohan Reid's necessary business expenses) resulted in Rohan Reid being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

177.   Rohan Reid brings claims against DIRECTV.

**William Sestito**

178.   Plaintiff William Sestito is an individual residing in the state of Florida. Between approximately November 2010 and June 2011, William Sestito routinely worked more than 40 hours per week as a technician for DIRECTV in the state of Florida, and was unlawfully deprived of overtime compensation.

179.   In fact, William Sestito spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

180.   Defendants' employment policies and practices detailed herein (*i.e.,* imposing "chargebacks," failing to compensate William Sestito for all hours worked,

32

and failing to reimburse William Sestito's necessary business expenses) resulted in William Sestito being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

181.    William Sestito brings claims against DIRECTV.

**Kyle Bain**

182.    Plaintiff Kyle Bain is an individual residing in the state of Florida. Between approximately July 2012 and July 2014, Kyle Bain routinely worked more than 40 hours per week as a technician for DIRECTV, DirectSat, and MasTec primarily in the state of Florida and also in Alabama and Texas, and was unlawfully deprived of overtime compensation.

183.    In fact, Kyle Bain spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

184.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Kyle Bain for all hours worked, and failing to reimburse Kyle Bain's necessary business expenses) resulted in Kyle Bain being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

185.    Kyle Bain brings claims against DIRECTV, DirectSat and MasTec.

**Gerry Beaumariage**

186.    Plaintiff Gerry Beaumariage is an individual residing in the state of Florida. Between approximately May 2011 and the present, Gerry Beaumariage routinely worked more than 40 hours per week as a technician for DIRECTV and

MasTec in the state of Florida, and was unlawfully deprived of overtime compensation.

187.   In fact, Gerry Beaumariage spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

188.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Gerry Beaumariage for all hours worked, and failing to reimburse Gerry Beaumariage's necessary business expenses) resulted in Gerry Beaumariage being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

189.   Gerry Beaumariage brings claims against DIRECTV and MasTec.

**Josh Holland**

190.   Plaintiff Josh Holland is an individual residing in the state of Florida. Between approximately February 2012 and the present, Josh Holland routinely worked more than 40 hours per week as a technician for DIRECTV primarily in the states of Florida and Oklahoma, and was unlawfully deprived of overtime compensation.

191.   In fact, Josh Holland spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

192.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Josh Holland for all hours worked, and failing to reimburse Josh Holland's necessary business expenses) resulted in

Josh Holland being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

193.    Josh Holland brings claims against DIRECTV.

**Herbert Patterson, Jr.**

194.    Plaintiff Herbert Patterson, Jr. is an individual residing in the state of Florida. Between approximately September 2012 and the present, Herbert Patterson, Jr. routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Florida and was unlawfully deprived of overtime compensation.

195.    In fact, Herbert Patterson, Jr. spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

196.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Herbert Patterson, Jr. for all hours worked, and failing to reimburse Herbert Patterson, Jr.'s necessary business expenses) resulted in Herbert Patterson, Jr. being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

197.    Herbert Patterson, Jr. brings claims against DIRECTV and MasTec.

**Freddy Ramirez**

198.    Plaintiff Freddy Ramirez is an individual residing in the state of Florida. Between approximately October 2011 and November 2013, Freddy Ramirez routinely worked more than 40 hours per week as a technician for DIRECTV in the state of Florida, and was unlawfully deprived of overtime compensation.

199.    In fact, Freddy Ramirez spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

200.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Freddy Ramirez for all hours worked, and failing to reimburse Freddy Ramirez' necessary business expenses) resulted in Freddy Ramirez being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

201.    Freddy Ramirez brings claims against DIRECTV.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

202.    Plaintiffs re-allege all allegations set forth above.

203.    At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

204.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

205.    The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an

enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

206.    Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

207.    Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

208.    As to defendant DIRECTV, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their consent to join forms in the *Lang* or *Arnold* litigation,[6] plus periods of equitable tolling, because DIRECTV acted willfully and knew or showed reckless disregard in their violation of the FLSA.

209.    As to the Provider Defendants against which each Plaintiff makes a claim, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing of (1) their original complaint in this action, *i.e.*, November 1, 2013,[7] or (2) this complaint,[8] plus

---

[6] Or from the date of filing this complaint for new Plaintiffs Kyle Bain, Gerry Beaumariage, Josh Holland, Herbert Patterson, Jr., and Freddy Ramirez.

[7] Plaintiffs Christopher Barnhart, Dean Bourn, Anthony Buttita, Patrick Chilson, Stephen Fulton, Brunzell Griffin, Walter Hamilton, Joe Hill, Charles Kent, John Leavell, Christopher Lucio, Gerald Mickalowski, Raymond Orlando, Christopher Philbin, Anthony Talladino, and Brian Tinney.

periods of equitable tolling, because Provider Defendants acted willfully and knew or showed reckless disregard in its violation of the FLSA.

210.    Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

211.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result thereof, Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

212.    As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld from Plaintiffs by Defendants. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional

---

[8] Plaintiffs Paul Aschenbrener, Ralph Ellis, Jason Lewis, Michael Picou, Reid Rohan, William Sestito, Kyle Bain, Gerry Beaumariage, Josh Holland, Herbert Patterson, Jr., and Freddy Ramirez.

amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

213.    Plaintiffs request relief as described below and as permitted by law.

**WHEREFORE**, Plaintiffs demand a jury trial as to all issues so triable, and request the Court enter judgment for Plaintiffs individually and:

a.    Award damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

b.    Award liquidated damages under 29 U.S.C. § 216(b);

c.    Award reasonable attorneys' fees under the Fair Labor Standards Act;

d.    Award costs of suit under 29 U.S.C. § 216(b);

e.    Award pre-judgment interest;

f.    Award damages including wages or other compensation lost as a result of the misclassification; and

g.    Grant any further relief that the Court may deem just and equitable.

Dated: October 20, 2014                    Respectfully submitted,


By:  _/S/  Brendan Donelon_____
     Brendan Donelon, MI Bar #43907
     **DONELON, P.C.**
     420 Nichols Road, Suite 200
     Kansas City, Missouri 64112
     Telephone:  816.221.7100
     Facsimile:  816.709.1044
     E-mail:  Brendan@donelonpc.com



**STUEVE SIEGEL HANSON LLP**

George A. Hanson, *PHV Forthcoming*
MO Bar No. 43450
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:    816-714-7101
Email:  hanson@stuevesiegel.com

Ryan D. O'Dell, *PHV Forthcoming*
CA Bar No. 290802
500 West C Street, Suite 1750
San Diego, California 92101
Telephone:    619-400-5826
Facsimile:    619-400-5832
Email: odell@stuevesiegel.com

**HEARIN, LLC**
Jesse B. Hearin, III, *PHV Forthcoming*
La. Bar Roll No. 22422
1009 Carnation Street, Suite E
Slidell, Louisiana 70460
Telephone:    985-639-3377
Email: jbhearin@hearinllc.com

*Attorneys for Plaintiffs*

40